UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X
                  :

ICICI BANK UK PLC,               :      Case No. 15-5379 (VEC)
                  :

           Plaintiff,      :
                  :

        - against -      :      **PLAINTIFF'S  REPLY**
                  :      **MEMORANDUM OF LAW**
CARGILL, INCORPORATED AND CARGILL   :      **IN FURTHER SUPPORT**
FINANCIAL SERVICES INTERNATIONAL,  :      **OF ITS MOTION**
INC.,                  :      <u>**TO AMEND THE COMPLAINT**</u>
                  :

          Defendants.    :
                  :

-------------------------------------------------------------X      Oral Argument Requested
                  :

CARGILL, INCORPORATED AND CARGILL   :
FINANCIAL SERVICES INTERNATIONAL,  :
INC.,                  :
                  :

          Third-Party Plaintiffs,  :
                  :

        - against -      :
                  :

THE RECEIVABLES EXCHANGE, LLC,   :
                  :

          Third-Party Defendant. :
                  :

-------------------------------------------------------------X
                  :

ICICI BANK UK PLC,             :
                  :
                  :

          Plaintiff on the     :
          Additional Claim,  :
                  :

        - against -      :
                  :

THE RECEIVABLES EXCHANGE, LLC,   :
                  :

          Defendant on the  :
          Additional Claim  :
                  :

-------------------------------------------------------------X

## <u>TABLE OF CONTENTS</u>

NATURE OF THIS ACTION ...................................................................................................1

NATURE OF THIS MOTION ................................................................................................2

ARGUMENT ..........................................................................................................................4

I.     THE COURT SHOULD ALLOW THE BANK'S FRAUD CLAIM .................................4

     a.   The Bank's Fraud Claim is Not Duplicative of Its Breach of Contract Claims..............4

     b.   The Bank Adequately Pleads a Fraud Claim .................................................................7

II.    THE COURT SHOULD ALLOW THE BANK'S NEGLIGENT
       MISREPRESENTATION CLAIM .................................................................................11

     a.   The Negligent Misrpresentation Claim is Not Duplicative of the Contract Claims ......11

     b.   The Bank Adequately Pleads Negligent Misrepresentation .........................................11

     c.   The Bank Adequately Pleads a Special Relationship...................................................12

CONCLUSION.......................................................................................................................15

**TABLE OF AUTHORITIES**

<u>Cases</u>

*Abu Dhabi Comm. Bank v. Morgan Stanley & Co.,*
  No. 08 Civ. 7508 (SAS), 2013 WL 837536 (S.D.N.Y. Mar. 6, 2013) ................................... 13

*Abu Dhabi Comm. v. Morgan Stanley & Co. Inc.,*
  910 F. Supp. 2d 543 (S.D.N.Y. 2012) ............................................................................... 11

*Abu Dhabi Comm. Bank v. Morgan Stanley & Co.,*
  651 F. Supp. 2d 155 (S.D.N.Y. 2009) ............................................................................. 8, 9

*Accusystems, Inc. v. Honeywell Info. Sys., Inc.,*
  580 F. Supp. 474 (S.D.N.Y. 1984) ................................................................................... 15

*Anschutz Corp. v. Merrill Lynch & Co.,*
  690 F.3d 98 (2d Cir. 2012) ............................................................................................... 13

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.,*
  98 F.3d 13 (2d Cir. 1996) ................................................................................................... 6

*CAC Grp. Inc. v. Maxim Grp. LLC,*
  523 F. App'x 802 (2d Cir. 2013) ...................................................................................... 11

*Connecticut Nat'l Bank v. Fluor Corp.,*
  808 F.2d 957 (2d Cir. 1987) ............................................................................................. 10

*Draskicevic v. Entersport Mgmt. Inc.,*
  No. 03-8447 (DLC), 2004 WL 1575393 (S.D.N.Y. July 15, 2004) ......................................... 6

*Deutsche Zentral-Genossenchaftsbank AG v. HSBC N. Am. Holdings, Inc.,*
  No. 12 Civ. 4025 (AT), 2013 WL 6667601 (S.D.N.Y. Dec. 17, 2013) ................................... 13

*EED Holdings v. Palmer Johnson Acquisition Corp.,*
  387 F. Supp. 2d 265 (S.D.N.Y. 2004) ............................................................................... 15

*Eternity Global Master Fund, Ltd. v. Morgan Guaranty Trust Co. of N.Y.,*
  375 F.3d 168 (2d Cir. 2004) ............................................................................................... 7

*Fed. Hous. Fin. Agency v. UBS,*
  858 F. Supp. 2d 306 (S.D.N.Y. 2012) ............................................................................... 13

*First Bank of Ams. v. Motor Car Funding,*
  257 A.D.2d 287 (1st Dep't 1999) ................................................................................... 4, 6

*Fresh Direct, LLC v. Blue Martini Software, Inc.,*
  7 A.D.3d 487 (2d Dep't 2004) .......................................................................................... 14

*Goldman v. Belden*,
  754 F.2d 1059 (2d Cir. 1985) .................................................................................... 8

*GoodWorldCreations LLC v. Albright*,
  14 Civ. 3848 (TPG), 2015 WL 4900246 (S.D.N.Y. Aug. 17, 2015)......................................... 6

*Int'l Fund Mgmt. S.A. v. Citigroup Inc.*,
  822 F. Supp. 2d 368 (S.D.N.Y. 2011).................................................................................. 14

*Kimmell v. Schaefer*,
  89 N.Y.2d 257 (1996) ...................................................................................................11, 12

*LaSalle Bank N.A. v. Citicorp Real Estate Inc.*,
  No. 02 Civ. 7868 (HB), 2003 WL 1461483 (S.D.N.Y. Mar. 21, 2003) .................................. 11

*Marcus v. Frome*,
  329 F. Supp. 2d 464 (S.D.N.Y. 2004)................................................................................... 10

*Matana v. Merkin*,
  989 F. Supp. 2d 313 (S.D.N.Y. 2013)................................................................................... 10

*MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*,
  87 A.D.3d 287 (1st Dep't 2011) .........................................................................................4, 6

*McMahan & Co. v. Bass*,
  250 A.D.2d 460 (1st Dep't 1998) ......................................................................................... 11

*Neilsen Media Research, Inc. v. Microsystems Software, Inc.*,
  No. 99 Civ. 10876 (LAP), 2002 WL 31175223 (S.D.N.Y. Sept. 30, 2002)........................... 14

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
  446 F. Supp. 2d 163 (S.D.N.Y. 2006).................................................................................... 12

*Rikhy v. AMC Comp. Corp.*,
  No. 01 Civ. 7007 (WHP) (JCF), 2002 WL 1424596 (WHP)................................................. 10

*Ritchie Capital Management, L.L.C. v. Coventry First LLC*,
  No. 07 Civ. 3494 (DLC), 2007 WL 2044656 (S.D.N.Y. July 17, 2007)................................... 6

*Rocanova v. Equitable Life Assur. Socy. of U.S.*,
  83 N.Y.2d 603 (1993) ......................................................................................................... 10

*Sicari v. J.C. Penny Corp.*,
  No. 05 Civ. 5392 (LMM), 2005 WL 3440693 (S.D.N.Y. Dec. 14, 20015)........................... 10

*Suez Equity Investors, L.P. v. Toronto-Dominion Bank*,
  250 F.3d 87 (2d Cir. 2001)................................................................................................... 13

iii

*Walker v. Sheldon,*
  10 N.Y.2d 401 (1961) ..................................................................................... 10

*Wexner v. First Manhattan Co.,*
  902 F.2d 169 (2d Cir. 1990) ......................................................................... 10

*White v. Guarente,*
  43 N.Y.2d 356 (1977) ..................................................................................... 12

*Wyle Inc. v. ITT Corp.,*
  130 A.D.3d 438 (1st Dep't 2015) ...............................................................4, 5

<u>Rules</u>

Fed. R. Civ. P. 9(b) ...................................................................................7, 8, 11, 12

Fed. R. Civ. P. 12(b)(6) ....................................................................................3, 7

## NATURE OF THIS ACTION

On or about October 31, 2014, December 30, 2014 and April 10, 2015, Plaintiff ICICI Bank UK plc (the "Bank") purchased three accounts receivable (the "A/Rs") in the aggregate face amount of $9,000,092.63. At the time of purchase, the Bank believed that the A/Rs arose from bona fide sales of specific goods by defendants Cargill, Incorporated ("Cargill, Inc.") and/or Cargill International Financial Services, Inc. ("CIFS" and with Cargill, Inc., the "Cargill Defendants") to non party Mercator Lines (Singapore) Limited ("Mercator"). The Bank's belief was predicated on, among other things, the Cargill Defendants' express representations and warranties.

It is beyond honest debate, however, that the A/Rs reflected fictional "sales" that served to camouflage the Cargill Defendants' loans to Mercator. The loans were effected through paired transactions: a Cargill entity's notional sale to Mercator for which Mercator's payment obligation was deferred (*i.e.*, the activity reflected in the A/Rs) and Mercator's simultaneous notional back-to-back sale to the Cargill Defendants (*i.e.*, activity that was not disclosed to the Bank). In contrast to the first half of each pair, the Cargill Defendants immediately "paid" Mercator for the notional repurchase. In reality, these illusory back-to-back transactions were simply unsecured loans to (and not purchases by) Mercator.[1]

The Bank discovered this truth in the spring of 2015 when Mercator began to stumble financially and, among other things, failed to pay the first maturing of the A/Rs. When that default occurred, the Bank demanded and obtained copies of underlying "trade" documentation from third-party defendant and defendant on the additional claim, The Receivables Exchange,

---

[1] The fictional nature of these transactions was the Cargill Defendants' most egregious misrepresentation, but there were others, as well, each of which provides a predicate for a fraud claim. Thus, for example, the Cargill Defendants represented and warranted that the A/Rs reflected Mercator's purchase of specific goods—bunker fuel for ships. The truth is otherwise, the actual A/Rs reflect the "sale" of other products. (Proposed Amended Complaint ("A.C.") ¶ 34.) *See infra* 5-6.

LLC, ("TRE"), the intermediary through which the Cargill Defendants sold the A/Rs.[2]  Invoking

the relevant Buyer and Seller Agreements, the Bank then instructed TRE to arrange for the

Cargill Defendants' "repurchase" of the A/Rs.  The Cargill Defendants refused.  This action

ensued.[3]

## NATURE OF THIS MOTION

The Bank seeks to amend its complaint to add claims of fraud and negligent

misrepresentation.[4]

In its original complaint, the Bank pled, in essence, the Cargill Defendants' breach of

contract:  that which the Cargill Defendants sold—the A/Rs—contravened, among other things,

standing representations and warranties set out in the relevant Seller Agreement.[5]  In response,

the Cargill Defendants answered and served a third-party complaint against TRE in which they

pled far more than a mere denial of their breach.  (A.C. ¶¶ 43-45.)  Indeed, their pleadings

demonstrate that they always knew that the A/Rs did not satisfy those standing representations

and warranties and therefore could not qualify for sale via TRE.  *Id.*

Thus, the Cargill Defendants pled that they expressly informed TRE of the true nature of

the A/Rs and sought TRE's assurance that they could nevertheless sell the A/Rs via TRE.  *Id.*  At

---

[2] This dispute involves three participants each assuming a distinct role:  the Buyer (here, the Bank); the Seller (the Cargill Defendants); and TRE, the intermediary.  They are connected by two interlocking agreements, the "Buyer Agreement" executed by the Bank and TRE, and the "Seller Agreement" executed by the Cargill Defendants and TRE.  (*See* A.C. ¶¶ 14-15, 20-21.)  By its terms, the Buyer, *i.e.*, the Bank, is a third-party beneficiary of the Seller Agreement executed by the Cargill Defendants.  (A.C. ¶ 15.)

[3] On September 14, 2015, Mercator commenced proceedings in its home jurisdiction, Singapore, to restructure its business. http://mllsg.listedcompany.com/newsroom/20150914_082557_EE6_ H0LWV3HP42EZMUNC.1.pdf  (downloaded November 5, 2015).

[4] The proposed Amended Complaint is attached as Exhibit 1 to the Declaration of Michael T. Sullivan, dated October 5, 2015, ECF 39.

[5] These include, inter alia, the representation and warranty that any receivable the Cargill Defendants sold via TRE: "arose from a bona fide, arm's length sale of goods or services in the ordinary course of the Seller's business" (Seller Agreement § 10.1.5).  (A.C. ¶ 18.)  The A/Rs also contravened representations and warranties contained in the Cargill Informational Memo- Mercator (the "Info Mem").  (A.C. ¶¶ 25-26, 34.)

a minimum, this alleged disclosure reveals that the Cargill Defendants understood that the A/Rs were problematic.  Given the explicit language of their standing representations and warranties, they could not have understood otherwise.  But in fact the Cargill Defendants made this alleged disclosure in a way designed to keep potential purchasers, like the Bank, in the dark.  The Cargill Defendants were aware that potential purchasers of the A/Rs, like the Bank, would have access only to certain abstracts of the A/Rs, *i.e.*, information that reflected only certain aspects of the notional "sales," *e.g.*, the buyer, goods, date of consummation, and amount owing.  (A.C. ¶¶ 27, 29.)  Information beyond the abstracts (including the Cargill Defendants' alleged disclosure to TRE that contradicted the abstracts) was not to be made—and was not made—available to the Bank.  (A.C. ¶¶ 33-38.)  Disclosure designed not to be seen is not disclosure.  The Cargill Defendants knew and intended that potential buyers like the Bank would see and rely on the misleading abstracts, not the ancillary "disclosure."  This is the essence of fraud.

Alternatively, the Cargill Defendants negligently misrepresented the nature of the A/Rs.  (A.C. ¶¶ 75-84.)  The Cargill Defendants chose to offer the A/Rs via TRE, but: (a) knew that TRE's "platform" did not permit buyers like the Bank to approach sellers directly and (b) knew that buyers like the Bank would rely on  the A/R abstracts.  Thus, the Cargill Defendants, with their unique knowledge of material facts concerning the A/Rs, owed the Bank and other potential buyers a heightened duty to confirm that information posted on the TRE website was accurate.  (A.C. ¶¶ 76-77.)

The Cargill Defendants now oppose the Bank's motion to amend its complaint on the grounds that the claims for fraud and negligent misrepresentation would not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

<u>**ARGUMENT**</u>

**I.      THE COURT SHOULD ALLOW THE BANK'S FRAUD CLAIM**

      a.      <u>The Bank's Fraud Claim is Not Duplicative of Its Breach of Contract Claims</u>

As a broad proposition, naked allegations that a party entered into a contract intending not to perform will not support a fraud claim. *See Wyle Inc. v. ITT Corp.*, 130 A.D.3d 438, 439 (1st Dep't 2015). But that is not what the Bank alleges. Instead, the Bank alleges that the Cargill Defendants made *specific* misrepresentations of then *present* facts, *i.e.*, the true nature of the A/Rs. (A.C. ¶¶ 21-25, 66-67.) As such, the Bank has properly alleged a fraud claim, even as it also alleges a contract claim. *See Wyle Inc.*, 130 A.D.3d at 439 (allowing parallel fraud and contract claims); *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, 87 A.D.3d 287, 293 (1st Dep't 2011) (same).

"Unlike a misrepresentation of future intent to perform, a misrepresentation of present facts is collateral to the contract," and hence separately actionable. *MBIA Ins. Corp.*, 87 A.D.3d at 293 (quoting *First Bank of Ams. v. Motor Car Funding*, 257 A.D.2d 287, 292 (1st Dep't 1999) (internal quotation marks omitted)). A misrepresentation of present fact is separately actionable, even if it is embodied in a contractual representation or warranty. *See Wyle Inc.*, 130 A.D.3d at 439. In other words, "[a] fraud claim will be upheld when a plaintiff alleges that it was induced to enter into a transaction because a defendant misrepresented material facts, even though the same circumstances also give rise to the plaintiff's breach of contract claim." *MBIA Ins. Corp.* 87 A.D.3d at 293.

      *Wyle* illustrates the point. There, the plaintiff purchased from the defendant a company that generated its income from government contracts. *See* 130 A.D.3d at 442-43. When selling the company, the defendant falsely warranted in the sale contract that it had disclosed all ongoing

government audits of the company's contracts.  *Id.* at 443.  After the sale, the government completed an audit and reduced the rates payable to the purchased company.  *Id.*  The First Department held that the plaintiff's fraud claim was not duplicative of the contract claim because it alleged that the defendant misrepresented a present fact to induce the plaintiff to purchase the company at a higher price.  *See id.* at 440-42.  That the misrepresentation arose from the warranty and also supported a breach of contract claim did not render the fraud claim duplicative.  *See id.*  The court explained that "[i]t simply cannot be the case that any statement, no matter how false or fraudulent or pivotal, may be absolved of its tortious impact simply by incorporating it verbatim into the language of a contract."  *Id.*

As in *Wyle*, the Cargill Defendants misrepresented present facts—that the A/Rs  arose from bona fide sales of specific goods—not merely a future intent to perform.  These misrepresentations were collateral to the Seller Agreement and provide ample support for a fraud claim.

The Bank's fraud claim actually is more compelling than that of the plaintiff in *Wyle*.  There, the misrepresentations arose solely from contractual warranties and a failure to disclose material information.  In this dispute, however, the Cargill Defendants made further material misrepresentations of present fact, including in the Info Mem—an ancillary document—to induce the Bank to purchase the A/Rs.  (A.C. ¶ 25.)  In that document, the Cargill Defendants represented that the A/Rs arose from the sale of "Bunker Fuel for Ships" to Mercator.  *Id.*  This was patently false; the actual underlying documents reflect that the "sales" concerned "naptha" and "gasoil," not bunker fuel.  (A.C. ¶ 34.)  And of course, the A/Rs did not arise from the actual sale of anything to Mercator.

New York courts have also sustained parallel claims for fraud and breach of contract where, as here, the defendant makes an extra-contractual misrepresentation, the substance of which is expressly warranted in the contract.  For example, in *First Bank of Am. v. Motor Car Funding*, the parties entered into an agreement governing the terms under which defendant would sell car loans to plaintiff.  257 A.D. at 289.  The agreement contained warranties that the loans would comply with certain guidelines.  *Id.*  After the parties executed the agreement, the defendant materially misrepresented the quality of certain loans in order to induce plaintiff to purchase the loans.  *Id.*  The First Department held that plaintiff's fraud claim was not duplicative of the contract claim.  *Id.* at 291-92.  The court explained:

> The core of plaintiff's claim is that defendants intentionally misrepresented material facts about various individual loans so that they would appear to satisfy the [contractual] warranties . . . . This is fraud, not breach of contract.  A warranty is not a promise of performance, but a statement of present fact.  Accordingly, a fraud claim can be based on a breach of contractual warranties notwithstanding the existence of a breach of contract claim.  *Id.*

Similarly here, the Cargill Defendants made false representations in order to make the A/Rs appear to satisfy the warranties in the Seller Agreement and induce the Bank to purchase them.  This is an actionable fraud, notwithstanding the existence of the Bank's breach of contract claim.

The Cargill Defendants' authorities are not to the contrary.  *See Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 19-20 (2d Cir. 1996) (involving only misrepresentation of future intent); *GoodWorldCreations LLC v. Albright*, No. 14 Civ. 3848 (TPG), 2015 WL 4900246, at *12 (S.D.N.Y. Aug. 17, 2015) (same); *Ritchie Capital Management, L.L.C. v. Coventry First LLC*, No. 07 Civ. 3494 (DLC), 2007 WL 2044656, at *7 (S.D.N.Y. July 17, 2007) (explaining that a plaintiff cannot turn breach of contract claim into fraud claim by alleging that the defendant never intended to perform); *Draskicevic v. Entersport*

*Mgmt. Inc.*, No. 03-8447 (DLC), 2004 WL 1575393, at *1 (S.D.N.Y. July 15, 2004) (involving only misrepresentation of future intent).

The Bank's fraud claim therefore is not duplicative of its breach of contract claims and would readily withstand a Rule 12(b)(6) challenge.

> b. <u>The Bank Adequately Pleads a Fraud Claim</u>

A fraud claim alleging material misstatements or omissions must "(1) detail the statements that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements are fraudulent." *Eternity Global Master Fund, Ltd. v. Morgan Guaranty Trust Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004); Fed. R. Civ. P. 9(b). In addition, a fraud claim must contain facts giving rise to a strong inference of fraudulent intent. *See id.*

> i. <u>Statements</u>: The Amended Complaint details the fraudulent statements, including, but not limited to, the representations that the A/Rs arose from a "bona fide, arm's length sale of goods or services in the ordinary course of the Seller's business" (A.C. ¶ 18) and that the A/Rs arose from the sale of "Bunker Fuel for Ships" to Mercator (A.C. ¶ 25).

> ii. <u>Speaker of the Statements</u>: The Amended Complaint identifies the speaker: the Cargill Defendants. By executing the Seller Agreement and selling the A/Rs over the exchange, the Cargill Defendants represented and warranted that the A/Rs arose from bona fide sales of goods. (A.C. ¶¶ 16, 18.) With respect to the Info Mem, the Amended Complaint alleges that the Cargill Defendants prepared or authorized its preparation and dissemination to bidders on the A/Rs. (A.C. ¶ 26.)

> iii. <u>Context of the Statements</u>: The Amended Complaint adequately alleges where and when the statements were made. (A.C. ¶¶ 17-18, 21, 23-26, 26-28.) The Amended

Complaint alleges that copies of the Seller Agreement and Info Mem were provided to the Bank in June 2014, as authorized by the Cargill Defendants. (A.C. ¶¶ 23-26.) At the moment of sale of each A/R, the Cargill Defendants represented and warranted, through the Seller Agreement, that the A/R arose from a bona fide sale of goods. (*See* ¶¶ 17-18, 21, 28-30.) Finally, identifying the offering documents pursuant to which a defendant sells a financial product, like an account receivable, satisfies Rule 9(b)'s requirement of identifying the time, place, speaker, and content of the representation. *See Abu Dhabi Comm. Bank v. Morgan Stanley & Co.*, 651 F. Supp. 2d 155, 171 (S.D.N.Y. 2009) (explaining that Rule 9(b) satisfied by reference to securities offering memoranda). The Amended Complaint therefore satisfies Rule 9(b) by identifying the Seller Agreement, the Info Mem, and the other documents by which the Cargill Defendants offered and sold the A/Rs.

   iv. <u>Falsity of the Statements</u>: The Amended Complaint explains why the Cargill Defendants' representations were false: the A/Rs were represented to arise from bona fide sales of goods, when they arose only from notional sales to disguise loans. (A.C. ¶¶ 35-37.)

   v. <u>Fraudulent Intent</u>: The Amended Complaint adequately alleges fraudulent intent. Under Rule 9(b), "[m]alice, intent, knowledge and other condition of mind of a person may be averred generally." Fed. R. Civ. P. 9(b). "[G]reat specificity [is] not required with respect to the allegations of knowledge and scienter." *Goldman v. Belden*, 754 F.2d 1059, 1070 (2d Cir. 1985). A plaintiff need only allege those facts which give rise to a strong inference of fraudulent intent, either by pleading "motive and opportunity to commit fraud or strong circumstantial evidence of conscious misbehavior or recklessness." *Abu Dhabi Comm. Bank*, 651 F. Supp. 2d at 171 (internal quotation marks and citations omitted).

The Amended Complaint adequately pleads motive and opportunity to commit fraud. Pleading motive entails alleging "concrete benefits that could be realized by one or more of the false statements and wrongful disclosures alleged," while pleading opportunity entails alleging "the means and likely prospect of achieving concrete benefits by the means alleged." *See id.* at 171 (internal quotation marks omitted).

The Cargill Defendants' motivation is patent.

1.      The Cargill Defendants received money from the Bank (via TRE) when they sold the A/Rs.  While the Cargill Defendants' profit is not known, we can assume that they were not acting as a charity.

2.      The Cargill Defendants likely received more money for the A/Rs because they falsely described the A/Rs as reflecting bona fide trade debt.  The adage "trade gets paid" results in the perception that trade debt is more secure and therefore more valuable. *See* International Chamber of Commerce, *2015 Rethinking Trade & Finance, An ICC Private Sector Development Perspective*, at *49-51 (2015) (noting the "favorable risk profile" associated with trade debt and highlighting the "negligible default rates").  Indeed, the adage "trade gets paid" is borne out in this instance.  As part of its restructuring, Mercator proposes to provide trade creditors with favorable terms.  (A.C. ¶ 39.)  But Mercator, fully aware of the facts, does not consider the A/Rs to represent trade debt and proposes for them far less favorable terms. *Id.*

3.      The Cargill Defendants relieved themselves of the nonpayment risk associated with the A/Rs.

The Amended Complaint also adequately alleges strong circumstantial evidence of conscious misbehavior or recklessness.  Pleading conscious misbehavior or recklessness entails alleging facts showing defendant's knowledge that a statement is false, or at least that the defendant had access to the contradictory information.  *See Marcus v. Frome*, 329 F. Supp. 2d 464, 474 (S.D.N.Y. 2004) (sustaining fraud claim where defendants had access to information that contradicted statements in purchase agreement).  The Cargill Defendants' admissions that they repeatedly sought TRE's assurances that they could sell Mercator accounts receivable, notwithstanding the nature of the underlying transactions, amply demonstrate that the Cargill Defendants knew that the A/Rs did not comply with the representations and warranties in the Seller Agreement.  Nevertheless, the Cargill Defendants provided to the Bank, or authorized the provision of, documents that not only did not disclose the true nature of the A/Rs, but affirmatively represented that the A/Rs were something entirely different.  (A.C. ¶¶ 25-26, 34.) This strongly suggests that the Cargill Defendants knowingly or recklessly communicated the false statements to the Bank.[6]

For these reasons, the Bank's fraud claim is adequately pled.  The Bank's motion to amend the complaint should be allowed.[7]

_____

[6] The Bank pleads fraud with far more particularity than that considered in the cases on which the Cargill Defendants rely.  *See, e.g., Wexner v. First Manhattan Co.*, 902 F.2d 169, 173 (2d Cir. 1990) (complaint failed to allege facts suggesting that defendants knew representations to be false); *Connecticut Nat'l Bank v. Fluor Corp.*, 808 F.2d 957, 962 (2d Cir. 1987) (plaintiff's allegations showed defendant only had motive to act honestly); *Matana v. Merkin*, 989 F. Supp. 2d 313, 324-26 (S.D.N.Y. 2013) (plaintiff failed to allege any facts plausibly supporting reliance); *Sicari v. J.C. Penny Corp.*, No. 05 Civ. 5392 (LMM),  2005 WL 3440693, at *2 (S.D.N.Y. Dec. 14, 20015) (plaintiff failed even to allege that defendant made a false statement); *Rikhy v. AMC Comp. Corp.*, No. 01 Civ. 7007 (WHP) (JCF), 2002 WL 1424596, at *2 (S.D.N.Y. July 2, 2002) (plaintiff's only allegations of fraud were that "defendant has committed an actionable fraud on plaintiff by inducing people to write against the plaintiff and making fraudulent documents, in reliance on the defendant's misrepresentations of fact.").

[7] Contrary to the Cargill Defendants' assertion, the Amended Complaint states a claim for punitive damages in connection with the fraud and negligent misrepresentation claims. Even assuming that *Rocanova v. Equitable Life Assur. Socy. of U.S.*, 83 N.Y.2d 603 (1993) applies, the requirements for punitive damages are amply satisfied.  The Cargill Defendants abused the TRE platform by repeatedly making egregious misrepresentations about the nature of the receivables that it offered for sale to numerous potential buyers from around the world and specifically sold to the Bank.  *See id.* at 613; *see also Walker v. Sheldon*, 10 N.Y.2d 401, 403-06 (1961) (sustaining

## II.   THE COURT SHOULD ALLOW THE BANK'S NEGLIGENT MISREPRESENTATION CLAIM

A plaintiff adequately pleads a claim for negligent misrepresentation by alleging that (1) there existed a special relationship imposing a duty on the defendant to impart correct information to the plaintiff, (2) the information was incorrect, and (3) plaintiff reasonably relied on the information.  *Abu Dhabi Comm. Bank v. Morgan Stanley & Co. Inc.*, 910 F. Supp. 2d 543, 546 (S.D.N.Y. 2012); *Kimmell v. Schaefer*, 89 N.Y.2d 257, 264 (1996) (affirming defendant's liability for negligently misrepresenting information about project to investors).

### a.   The Negligent Misrepresentation Claim is Not Duplicative of the Contract Claims

The Bank's negligent misrepresentation claim is not duplicative of its breach of contract claims for the same reasons that its fraud claim is not duplicative of its breach of contract claim. *See supra* at 4-7.  Unlike in the cases that the Cargill Defendants cite, the Cargill defendants made false statements of present fact that were collateral to the Seller Agreement.  *See LaSalle Bank N.A. v. Citicorp Real Estate Inc.*, No. 02 Civ. 7868 (HB), 2003 WL 1461483, at *3-4 (S.D.N.Y. Mar. 21, 2003) ("Although it is possible, even probable, that the representations and warranties in the PSA reflect similar representations and warranties made during negotiations, LaSalle's complaint does not say this."); *McMahan & Co. v. Bass*, 250 A.D.2d 460 (1st Dep't 1998) (affirming dismissal of fraud claim where tortious conduct related to performance of the contract).

### b.   The Bank Adequately Pleads Negligent Misrepresentation

The Second Circuit has not decided whether the stricter pleading requirements of Fed. R. Civ. P. 9(b) necessarily apply to claims for negligent misrepresentation.  *See CAC Grp. Inc. v. Maxim Grp. LLC*, 523 F. App'x 802, 806 (2d Cir. 2013) (noting that, under facts of the case, the

---

claim for punitive damages on fraudulent inducement claim where defendant sought to defraud plaintiff and others into entering into contracts).

court need not resolve whether the pleading requirements of Rule 9(b) or Rule 8(a) apply to claim for negligent misrepresentation).  In any event, for the reasons discussed above, the Bank's allegations satisfy Rule 9(b).  The Amended Complaint identifies the false statements and their context and alleges strong circumstantial evidence that the Cargill Defendants negligently or recklessly failed to ensure that the Bank received complete and accurate information respecting the A/Rs.  *See Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 446 F. Supp. 2d 163, 200 (S.D.N.Y. 2006) (finding negligent misrepresentation claim pled with particularity for same reasons as related fraud claim).

### c.  The Bank Adequately Pleads a Special Relationship

"In the commercial context, a duty to speak with care exists when the relationship of the parties, arising out of contract or otherwise, [is] such that in morals and good conscience the one has the right to rely upon the other for information."  *Kimmell*, 89 N.Y.2d at 263 (internal citation and quotation marks omitted).  "[A] negligent statement may be the basis for recovery of damages, where there is carelessness in imparting words upon which others were expected to rely and upon which they did act or failed to act to their damage . . . [where] expressed directly, with knowledge or notice that it will be acted upon, to one to whom the author is bound by some relation of duty, arising out of contract or otherwise, to act with care if he acts at all."  *White v. Guarente*, 43 N.Y.2d 356, 362-63 (1977) (reversing dismissal of negligent misrepresentation claim because "plaintiff seeks redress, not as a mere member of the public, but as one of a settled and particularized class among the members of which the report would be circulated for the specific purpose of fulfilling the limited partnership agreed upon arrangement.").  Finally, a sparsely pled "special relationship of trust or confidence" is not fatal to a claim for negligent misrepresentation where "the complaint emphatically alleges the other two factors enunciated in *Kimmell*, [that the statements were false and that the plaintiff reasonably relied on those false

statements]." *Suez Equity Investors, L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 103 (2d Cir. 2001).

In arguing that no special relationship existed, the Cargill Defendants make much of the fact that they allegedly did not know the Bank's identity and sold the A/Rs, not "directly," but through TRE. *See* Opp. Mem. at 9-12. This argument ignores the fact that the Cargill Defendants *selected* a sales method—TRE's "platform"—that mandated anonymity. TRE's platform insulated the Cargill Defendants from direct approaches from potential buyers like the Bank and, in fact, required potential buyers to rely on transaction abstracts and on the Cargill Defendants' standing representations and warranties. This does not mean that the Cargill Defendants' sales of the A/Rs to the Bank were not direct (TRE was not a merchant bank selling from its own account), nor that the representations and warranties in the Seller Agreement and other documents were not made directly to the Bank as the intended, third-party beneficiary.[8]

At issue is *not* the Cargill Defendants' unique knowledge about its own business practices, which might not be enough to sustain a claim for negligent misrepresentation. *See* Opp. Mem. at 11-12 (citing, *e.g.*, *Fed. Hous. Fin. Agency v. UBS Ams.*, 858 F. Supp. 2d 306, 335 (S.D.N.Y. 2012) (greater knowledge of loan files and underwriting practices insufficient to sustain negligent misrepresentation claim in RMBS case); *Deutsche Zentral-Genossenchaftsbank AG v. HSBC N. Am. Holdings, Inc.*, No. 12 Civ. 4025 (AT), 2013 WL 6667601, at *16 (S.D.N.Y.

---

[8] The Cargill Defendants argue that a negligent misrepresentation lies only where the misstatements are made directly by defendant to plaintiff. *See* Opp. Mem. at 11. Even accepting that proposition as true, the Cargill Defendants representations and warranties were made directly to the Bank as the intended beneficiary thereof. The cases relied on by the Cargill Defendants do not prove otherwise. *See Anschutz Corp. v. Merrill Lynch & Co.*, 690 F.3d 98, 114-15 (2d Cir. 2012) (dismissing negligent misrepresentation claim against ratings agencies because they were third parties to the sale of securities at issue and had no relationship or contact with the plaintiff purchaser); *Abu Dhabi Comm. Bank v. Morgan Stanley & Co.*, No. 08 Civ. 7508 (SAS), 2013 WL 837536, at *4 (S.D.N.Y. Mar. 6, 2013) (no liability for communicating third-party's statements through electronic platform to many buyers of notes). *Abu Dhabi* stands only for the proposition that, under certain circumstances, a seller may not be liable for negligent misrepresentation for statements communicated to investors through an electronic platform. It is incorrect to read *Abu Dhabi* as precluding negligent misrepresentation claims whenever a financial product is sold through an electronic platform, and, even if it were, the decision is not binding on this Court.

Dec. 17, 2013) (same)).  Instead, the Cargill Defendants are at fault because they possessed but

did not disclose (and in fact concealed) special knowledge about specific, core facts concerning

the underlying transactions, which knowledge was critically important to the Bank's decision to

purchase the A/Rs.

Importantly and undeniably, the Cargill Defendants adopted a sales methodology that

effectively prevented the Bank from directly approaching the Cargill Defendants with questions.

Given these constraints, the Bank became uncommonly dependent on the Cargill

Defendants for a full and fair (and not misleading) description of A/Rs, which the Cargill

Defendants did not provide.  *See Neilsen Media Research, Inc. v. Microsystems Software, Inc.*,

No. 99 Civ. 10876 (LAP), 2002 WL 31175223, at *11 (S.D.N.Y. Sept. 30, 2002) (declining to

dismiss negligent misrepresentation claim on summary judgment where "Microsystems

possessed more knowledge than Nielsen with respect to Internet tracking software, and

Microsystems was well aware of the extent to which Nielsen would rely on Microsystems'

representations.").[9]

This combination of knowledge and restricted contact gave rise to a special relationship.

It is no answer that the Bank could have approached TRE as intermediary with questions about

the A/Rs.  The system the Cargill Defendants embraced was designed to keep TRE in the middle

and discourage communication from the bidders to Cargill.

The cases the Cargill Defendants cite to the contrary involve only typical arm's length

transactions where, unlike here, there were no uncommon circumstances imposing a heightened

duty on the speaking party to provide truthful information.  *See, e.g.*, *Int'l Fund Mgmt. S.A. v.*

---

[9] Contrary to the Cargill Defendants' suggestion, the existence of the contractual relationship under the Seller Agreement and Buyer Agreement does not defeat the Bank's allegations of a special relationship.  *See Fresh Direct, LLC v. Blue Martini Software, Inc.*, 7 A.D.3d 487, 489 (2d Dep't 2004)  (finding special relationship despite existence of related contract).

*Citigroup Inc.*, 822 F. Supp. 2d 368, 388 (S.D.N.Y. 2011) (dismissing negligent misrepresentation claim where plaintiff was simply one of many of defendant's customers); *EED Holdings v. Palmer Johnson Acquisition Corp.*, 387 F. Supp. 2d 265, 282 (S.D.N.Y. 2004) (no special relationship where defendant had no unique knowledge or expertise); *Accusystems, Inc. v. Honeywell Info. Sys., Inc.*, 580 F. Supp. 474, 481 (S.D.N.Y. 1984) (no special relationship between customer and computer technical support provider).

These allegations amply support a claim for negligent misrepresentation; and the claim as proposed would easily withstand a Rule 12(b)(6) motion.  The Bank's motion for leave to amend the complaint therefore should be granted.

## <u>CONCLUSION</u>

For the reasons set forth above, the Bank respectfully requests that its Motion for Leave to Amend its Complaint be granted.

Dated: New York, New York
        November 6, 2015

**SULLIVAN & WORCESTER LLP**

By: /s/Michael T. Sullivan
      Michael T. Sullivan
      Clark A. Freeman

1633 Broadway, 32nd Floor
New York, New York 10019
Telephone: (212) 660-3000
Facsimile: (212) 660-3001

*Attorneys for Plaintiff*

15