UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ICICI BANK UK PLC,<br><br>                               Plaintiff,<br><br>      - against -<br><br>CARGILL, INCORPORATED and CARGILL FINANCIAL SERVICES INTERNATIONAL, INC.,<br><br>                           Defendant. | Case No. 15-5379 (VEC) |
| CARGILL, INCORPORATED and CARGILL FINANCIAL SERVICES INTERNATIONAL, INC.,<br><br>                    Third-Party Plaintiffs,<br><br>      - against –<br><br>THE RECEIVABLES EXCHANGE, LLC,<br><br>                    Third-Party Defendant. | Oral Argument Requested |
| ICICI BANK UK PLC,<br><br>                    Plaintiff on the<br>                    Additional Claim,<br><br>      - against –<br><br>THE RECEIVABLES EXCHANGE, LLC,<br><br>                  Defendant on the<br>                Additional Claim. | |

## THE RECEIVABLES EXCHANGE, LLC'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS THE THIRD-PARTY COMPLAINT

### ZEICHNER ELLMAN & KRAUSE LLP
**1211 Avenue of the Americas**
**New York, New York 10036**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................ii

PRELIMINARY STATEMENT .................................................................................... 1

ARGUMENT ................................................................................................................. 2

POINT I      CARGILL'S ALLEGATIONS FALL FAR SHORT OF ALLEGING
THE TYPE OF EGREGIOUS MISCONDUCT REQUIRED TO
OVERCOME THE CONTRACTUAL LIMITATIONS ON TRE'S
LIABILITY ...................................................................................... 2

POINT II     CARGILL MAY NOT ASSERT CLAIMS BASED ON IMPLIED
OBLIGATIONS  THAT ARE CONTRARY TO THE SELLER
PROGRAM AGREEMENT ...................................................... 6

POINT III    CARGILL'S FRAUD CLAIM IS ILLOGICAL, DUPLICATIVE OF
ITS BREACH OF CONTRACT CLAIM, AND UNSUPPORTD BY
FACTUAL ALLEGATIONS ................................................... 8

CONCLUSION............................................................................................................ 10

# TABLE OF AUTHORITIES

**Page(s)**

FEDERAL CASES

American Automobile Ins. Co. v. Rest Assured Alarm System, Inc.,
  786 F. Supp.2d 798 (S.D.N.Y. 2011)..........................................................................................3

Constellation Brands v. Keste, LLC,
  2014 U.S. Dist. LEXIS 159753 (W.D.N.Y. 2014) ....................................................................3

CSC Scientific Co. v. Manorcare Health Servs, Inc.,
  867 F. Supp.2d 368 (S.D.N.Y. 2011).........................................................................................7

Dash v. Seagate Technology (US) Holdings, Inc.,
  2015 U.S. Dist. LEXIS 44636 (E.D.N.Y. 2015)......................................................................10

Deutsche Lufthansa AG v. The Boeing Co.,
  2007 U.S. Dist. LEXIS 9519 (S.D.N.Y. 2007)..........................................................................3

Indus. Risk Insurers v. Port Auth. of N.Y. & N.J.,
  387 F. Supp.2d 299 (S.D.N.Y. 2005) ........................................................................................3

LaSalle Bank N.A. v. Citicorp Real Estate, Inc.,
  2003 U.S. Dist. LEXIS 12043 (S.D.N.Y. 2003).....................................................................7, 8

M-101, LLC v. iN Demand L.L.C.,
  2007 U.S. Dist. LEXIS 88913 (S.D.N.Y. 2007)......................................................................10

New Shows, S.A. v. Don King Prods., Inc.,
  201 F.3d 355 (2d Cir. 2000).....................................................................................................10

Phoenix Light SF Ltd v. Bank of N.Y. Mellon,
  2015 U.S. Dist. LEXIS 131206 (S.D.N.Y. 2015).......................................................................6

Russell Publishing Group, Ltd. v. Brown Printing Co.,
  2015 U.S. Dist. LEXIS 13909 (S.D.N.Y. 2015).........................................................................3

TranformaCon, Inc. v. Vista Equity Partners, Inc.,
  2015 U.S. Dist. LEXIS 94896 (S.D.N.Y. 2015).........................................................................6

Willman v. Zelman & Assoc.,
  2012 U.S. Dist. LEXIS 35246 (S.D.N.Y. 2012).........................................................................6

**OTHER CASES**

Murphy v. American Home Products Corp.,
  58 N.Y.2d 293, 461 N.Y.S.2d 232 (1983) ..............................................................................7

SNS Bank, N.V. v. Citibank, N.A.,
  7 A.D.3d 352, 777 N.Y.S.2d 62 (1st Dept. 2004)....................................................................3

**RULES**

Federal Rule of Civil Procedure 12(b)(6) .......................................................................................1

## PRELIMINARY STATEMENT

Third-Party Defendant The Receivables Exchange, LLC ("TRE") submits this Reply Memorandum of Law in further support of its Motion to Dismiss the Third-Party Complaint of Defendants/Third Party Plaintiffs Cargill, Incorporated and Cargill Financial Services International, Inc. (together, "Cargill") pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

Cargill's case against TRE just does not make sense. Cargill was sued by plaintiff ICICI Bank UK plc ("ICICI") because it sold assets to ICICI (three accounts receivables) via TRE's electronic exchange, which assets were allegedly different than Cargill represented. Cargill has taken the position that there was nothing wrong with the receivables it sold to ICICI and should not have to buy them back. Indeed, it stands behind its representations about the receivables and denies any liability to ICICI. Notwithstanding its representations to ICICI and TRE about the nature of the receivables (and the fact that only Cargill knew whether or not those representations were true), Cargill has dragged TRE into this case by claiming TRE should have somehow known that the three receivables Cargill sold to ICICI were – contrary to Cargill's own representations and position regarding those receivables – not "appropriate" for sale. Cargill also alleges (while simultaneously insisting that there is no problem with what it sold) that TRE should have warned ICICI about the receivables at issue, even though Cargill does not allege that it ever told TRE, or that TRE otherwise knew, that they arose from the type of transaction about which ICICI complains (i.e, a Cargill Back-to-Back Sale).

---

[1]   Any capitalized term not defined herein shall have the meaning given such term in TRE's Memorandum of Law in Support of its Motion to Dismiss Cargill's Third-Party Complaint ("TRE Memo") (Doc. No. 44).

But Cargill is not being sued by ICICI because the receivables were not "appropriate."  Cargill is being sued by ICICI because it allegedly breached various contractual representations and warranties about the receivables, such as falsely representing that they arose from bona fide sales, and misidentifying the true seller, the type of goods sold and the related invoice numbers.[2]  These alleged breaches do not provide Cargill with any plausible claim against TRE, because Cargill – and Cargill alone – is responsible for what it sells on the Exchange.  In particular, Cargill cannot plausibly claim that TRE fraudulently induced Cargill to post the receivables on the Exchange, or failed to exercise ordinary care (much less engaged in bad faith or gross negligence) with respect to the receivables, when (i) Cargill itself denies there is anything wrong with the receivables it sold, and (ii) TRE had no contractual obligation to verify, or communicate to potential buyers regarding, the truth of Cargill's representations and warranties.  Accordingly, the Court should dismiss Cargill's third-party complaint against TRE.

**ARGUMENT**

**POINT I**

**CARGILL'S ALLEGATIONS FALL FAR SHORT OF ALLEGING
THE TYPE OF EGREGIOUS MISCONDUCT REQUIRED TO
OVERCOME THE CONTRACTUAL LIMITATIONS ON TRE'S LIABILITY**

"New York courts set the bar quite high in placing misconduct within the exceptions [to an exculpatory contract clause], demanding nothing short of … a compelling demonstration of egregious intentional misbehavior evincing extreme culpability: malice, recklessness, deliberate or callous indifference to the rights of others, or an extensive pattern of

---

[2]   The only alleged breach put at issue by Cargill's third-party complaint is ICICI's claim that the receivables did not arise from bona fide sales.

wanton acts." Deutsche Lufthansa AG v. The Boeing Co., 2007 U.S. Dist. LEXIS 9519 at *7 (S.D.N.Y. 2007) (quotations and citation omitted). "To constitute gross negligence, the act or omission must be of an aggravated character, as distinguished from the failure to exercise ordinary care." American Automobile Ins. Co. v. Rest Assured Alarm System, Inc., 786 F. Supp.2d 798, 808 (S.D.N.Y. 2011) (dismissing conclusory claims of gross negligence).

Given this "quite high" bar, courts in this Circuit regularly dismiss at the pleading stage breach of contract claims based on an exculpatory provision limiting a party's liability to acts of gross negligence, bad faith, or willful misconduct. See, e.g., Russell Publishing Group, Ltd. v. Brown Printing Co., 2015 U.S. Dist. LEXIS 13909 at *5-6 (S.D.N.Y. 2015) ("RPG has not pleaded facts that would constitute either willful or grossly negligent conduct"); Constellation Brands v. Keste, LLC, 2014 U.S. Dist. LEXIS 159753 at *14-14 (W.D.N.Y. 2014) ("the allegations of intentional wrongdoing … do not plausibly plead the type of egregious conduct that is required to set aside a clause limiting damages"); Deutsche Bank, 2007 U.S. Dist. LEXIS 9519 at *7 (holding "the conduct alleged by Lufthansa falls well below the levels required by the New York courts to invalidate a mutually agreed upon limitation of liability"); Indus. Risk Insurers v. Port Auth. of N.Y. & N.J., 387 F. Supp.2d 299, 305 (S.D.N.Y. 2005) ("New York courts are unwilling to let cases with releases of liability go to a jury on the issue of gross negligence simply because the plaintiff has added a conclusory allegation of gross negligence to a cause of action"); SNS Bank, N.V. v. Citibank, N.A., 7 A.D.3d 352, 355, 777 N.Y.S.2d 62 (1st Dept. 2004) ("a court need not accept as true conclusory allegations that a defendant was grossly negligent or acted willfully, in bad faith or with reckless disregard.")

The logical inconsistencies in Cargill's breach of contract claim reveal that this claim rests solely on conclusory labels of gross negligence. To wit, Cargill cannot defend the

nature of these transactions (it insists the Cargill Back-to Back Sales were bona fide sales and denies there is any basis for rescission), and also plausibly claim that TRE was grossly negligent in not raising alarm bells to potential buyers about the mere <u>possibility</u> of Cargill selling these types of receivables.  In other words, even assuming TRE knew that the Mercator Receivables arose from Cargill Back-to-Back Sales (it is not alleged TRE knew this), if the Cargill Back-to-Back Sales are consistent with Cargill's representations and create no liability for Cargill, then logically TRE cannot have acted with a reckless disregard approaching intentional misbehavior by not warning ICICI (or any other potential buyer) about the Cargill Back-to-Back Sales. Rather, TRE was entitled to rely (as it did) on Cargill's contractual representation that the Mercator Receivables arose from bona fides sales.  Moreover, there is no allegation here that TRE knew that the Mercator Receivables arose from Cargill Back-to-Back Sales (as opposed to a supposed discussion a year prior to these transactions, that such transactions, among many others, might be posted and, if so, a disclaimer might be useful), precluding any inference that TRE acted wrongfully at all, let alone with the required extreme culpability that smacks of intentional wrongdoing.

Cargill knows its allegations fall well short of the "quite high" bar necessary to demonstrate gross negligence or willful misconduct, so in its opposition papers on this motion it mischaracterizes what it actually pled.  Cargill's opposition asserts that "TRE received multiple disclosures from [Cargill] regarding the nature of the transactions with Mercator <u>that</u> <u>created</u> <u>the</u> <u>receivables</u> <u>in</u> <u>question</u>" and argues that "TRE promised and was obligated to convey to a potential buyer information about the Mercator Receivables" (defined by Cargill as "[t]he receivables at issue in this litigation").  Cargill Opp. at 1, 12 (emphasis added).  However this is not what Cargill actually alleges in its third-party complaint.  Cargill alleges it sent disclaimer

language about potential transactions over one year before the posting of the first Mercator

Receivable, but does <u>not</u> allege that TRE was informed (or otherwise knew) that the three

specific receivables at issue here (<u>i.e.</u>, those Cargill sold in October 2014, December 2014 and

April 2015) involved Cargill Back-to-Back Sales.[3]   Cargill also argues that it "expressly

requested that TRE provide a disclaimer about these contemplated transactions to any buyer or

potential buyer."   Cargill Opp. at 12.   In truth (or at least according to what is alleged in the

third-party complaint), the proposed disclaimer states: "<u>we</u> would look to insert the disclaimer …

in any transaction involving Cargill-to-Cargill trade flows or those where a Cargill entity is

inserted between two related or non-related entities."   Cargill Complaint ¶ 41 (emphasis added).

In order to provide such a disclaimer, the "we" (presumably Cargill) must actually know that a

transaction is one "involving Cargill-to-Cargill trade flows" or "where a Cargill entity is inserted

between two related or non related entities."   But again, there is no allegation that TRE did know

this.[4]   There is also no allegation that Cargill ever again communicated with TRE about a

proposed disclaimer prior to the sale of the first Mercator Receivable nearly one year later (or at

any time thereafter).   In sum, none of Cargill's conclusory allegations come close to

demonstrating the "egregious intentional misbehavior evincing extreme culpability" required to

overcome the contractual limitations on TRE's liability.   Accordingly, Cargill's breach of

contract claim should be dismissed based on the explicit limitations on TRE's liability set forth

in the Seller Program Agreement.

---

[3]   This is important, because when Cargill and TRE discussed a potential receivable from Mercator in January 2014 (long before Cargill posted the first Mercator Receivable), Cargill had advised that the goods it sold to Mercator might be "used by Mercator, sold to a 3rd party, or resold to Cargill for the purpose of extending financing to Mercator."   Cargill Complaint ¶ 43.   Obviously, only one of these three possibilities results in a Cargill Back-to-Back Sale.   Cargill was no less ambiguous in February 2014, when it advised TRE "that the commodity that [Cargill was] planning to sell to Mercator "<u>may</u> <u>be</u> … resold to Cargill for purpose of extending financing to Mercator.   <u>Id</u>. ¶ 45 (emphasis added).

**POINT II**

**CARGILL MAY NOT ASSERT CLAIMS BASED ON IMPLIED OBLIGATIONS
THAT ARE CONTRARY TO THE SELLER PROGRAM AGREEMENT**

Cargill tries two arguments to salvage its breach of implied covenant of good faith claim – both fail. Cargill first argues that its implied covenant claim is merely an "alternative theor[y]" to its breach of contract claim that should be permitted to survive "at this stage." Cargill Opp. at 16. However, courts in this Circuit routinely dismiss implied covenant of good faith claims at the pleading stage. See e.g., Phoenix Light SF Ltd v. Bank of N.Y. Mellon, 2015 U.S. Dist. LEXIS 131206 at *26 (S.D.N.Y. 2015) (holding that because defendant "had no duties other than its contractual duties … any cause of action for breach of implied duties cannot stand."); TranformaCon, Inc. v. Vista Equity Partners, Inc., 2015 U.S. Dist. LEXIS 94896 at *16-17 (S.D.N.Y. 2015) (granting motion to dismiss breach of implied duty claim because "the contract plainly governs" the allegations).[5]

Second, while Cargill argues that its claim for breach of the implied covenant of good faith "is meant to address issues that the contract does not expressly govern," (Opp. at 16 n.9), this claim is based on the allegation that TRE made "assurances that the Mercator Receivables could and should be sold on the TRE Platform in accordance with the Corporate Seller Program Agreement." Cargill Complaint ¶ 96 (emphasis added). Obviously the issue of

---

[4]   Cargill does not directly address its pleading failure concerning TRE's lack of knowledge. It buries this point in a footnote and calls TRE's argument "nonsensical," without explaining why. Cargill Opp. at 12, n.5. The only nonsensical position here is Cargill's assertion that TRE should be held responsible for Cargill's breach of its contractual representations and warranties.

[5]   Cargill's reliance on Willman v. Zelman & Assoc., 2012 U.S. Dist. LEXIS 35246 (S.D.N.Y. 2012) is misplaced, as in that case the defendants denied that they had a contract with the plaintiff. Here, there is no question as to the existence of a valid and enforceable contract, notwithstanding Cargill's silly assertion that "TRE imposed the terms of [the Seller Program Agreement]" on Cargill. Cargill Opp. at 1. The notion that Cargill (one of the largest companies in the world) was forced by TRE to sign a contract of adhesion is absurd and, in any event, Cargill makes no argument why the agreement is somehow unenforceable. To the contrary, its primary claim is for breach of the very contract it now suggests was "imposed" on it.

whether a receivable could be sold "in accordance with Corporate Seller Program Agreement" is one that "the contract plainly governs."  See TransformaCon, supra.[6]  In addition, the duty of good faith and fair dealing does not imply any obligation "inconsistent with other terms of the contractual relationship."  Murphy v. American Home Products Corp., 58 N.Y.2d 293, 304, 461 N.Y.S.2d 232 (1983).  This rule prevents Cargill from claiming that TRE breached an implied obligation to assure the "appropriateness" of the receivables Cargill offered for sale, because such an obligation would be fundamentally inconsistent with the express terms of the Seller Program Agreement.  These terms include (i) the various representations that Cargill made to TRE and Buyers about the receivables it was offering for sale, and (ii) Cargill's explicit agreement that "TRE'S OBLIGATIONS TO SELLER HEREUNDER, OR OTHERWISE, ARE AND SHALL BE LIMITED TO THOSE SPECIFICALLY PROVIDED HEREIN TO THE EXCLUSION OF ALL OTHER OBLIGATIONS AND RESPONSIBILITIES."  Agreement, §§ 4.1, 10.1 (emphasis original).

The specific limitations on TRE's obligations to which Cargill agreed also require the dismissal of Cargill's claim for common law indemnification.  CSC Scientific Co. v. Manorcare Health Servs, Inc., 867 F. Supp.2d 368, 377-378 (S.D.N.Y. 2011) (dismissal based on "a written agreement expressing the parties intention to limit a common law obligation"); see also LaSalle Bank N.A. v. Citicorp Real Estate, Inc., 2003 U.S. Dist. LEXIS 12043 at *17-18 (S.D.N.Y. 2003).  In LaSalle Bank, the District Court granted a motion to dismiss Citicorp's counterclaim for implied indemnity, holding that "to find implied indemnification here would conflict with [the express contract] which states that 'the Special Servicer shall be liable only to

---

[6]  Section 5.3 of the Agreement provides that "[Cargill] shall follow the Posting Procedures set forth in the Rules and Procedures as in effect from time to time."  In turn, those Rules and Procedures dictate what information Cargill must provide about the Account Debtor and its relationship to that Account Debtor.  Seller Agreement, Exhibit 2 a pp. 4-5.  Moreover, the Agreement required Cargill to represent and warrant to TRE and Buyers that each receivable it posted for sale met certain criteria.  Seller Program Agreement, § 10.1.

the extent of the respective obligations specifically imposed and undertaken by the Special Servicer." Id. The court also noted that "[t]he burden of establishing an implied agreement to indemnify is a heavy one, especially in business relationships where parties are free to negotiate for express indemnification clauses." Id. The same rationale applies here.

### POINT III

### CARGILL'S FRAUD CLAIM IS ILLOGICAL, DUPLICATIVE OF ITS BREACH OF CONTRACT CLAIM, AND UNSUPPORTD BY FACTUAL ALLEGATIONS

Cargill's fraud claim, based on the alleged assurances about the "appropriateness" of the Mercator Receivables, makes no sense for two reasons. First, Cargill cannot plausibly claim to have been defrauded into selling something that it still maintains was appropriate for sale. Second, only Cargill knew the nature of its transactions with Mercator and was therefore uniquely situated to assess the Mercator Receivables it posted on the Exchange. Moreover, the issue in this case is not whether the Mercator Receivables were "appropriate" for sale; the issue is whether Cargill breached its contractual representations and warranties about the Mercator Receivables, including whether they arose from bona fide sales.

Cargill's frivolous fraud claim confirms that this is a breach of contract case, not a fraud case (a position shared by Cargill, at least when it is wearing its defendant hat).[7] Indeed, Cargill does not argue that TRE had a legal duty separate from its obligations under the Seller

---

[7] In opposing ICICI's motion to amend Cargill relies on the Seller Agreement to argue that ICICI "may not turn its garden variety breach of contract claim into a tort." Cargill further argues that ICICI's proposed fraud and negligent misrepresentation claims "are nothing more than dressed up versions of its breach of contract claim." Cargill Opposition to ICICI Motion To Amend (Doc. No. 47), at 16. The same is true of Cargill's fraud claim.

Program Agreement or claim to have suffered special damages outside of the contract.[8]  Cargill argues only that TRE's alleged assurances about the "appropriateness" of the Mercator Receivables were misrepresentations of present fact that were collateral to the Seller Program Agreement.  Cargill Opp. at 23, citing Cargill Complaint ¶¶ 108-110.  Cargill's argument misses the central point here: that is, the Seller Program Agreement (and specifically Cargill's representations and warranties therein) determine the appropriateness of the Mercator Receivables.

In addition, Cargill does not (because it cannot) identify any "present facts" about the Mercator Receivables that TRE allegedly misrepresented.  This is because only Cargill knew the "present facts" about Mercator Receivables when they were posted on the Exchange.[9]  And, the alleged "right in the strike zone" comment (made over a year before the first Mercator Receivable was posted) could not have been a misstatement of "present fact" concerning "the receivables in question" as Cargill argues, because the receivables in question did not yet exist.  This is also a vague, non-actionable statement of opinion that, regardless of its uncertain meaning, in no way altered Cargill's contractual obligation to make accurate representations and warranties about the receivables it offered for sale on the Exchange.

---

[8]  Cargill could not have argued otherwise because it acknowledged and agreed that "TRE's obligations to [Cargill] hereunder, or otherwise, are and shall be limited to those specifically provided herein to the exclusion of all other obligations and responsibilities."  Agreement § 4.1.  Equally, Section 16.18 of the Seller Program Agreement precludes the recovery of special damages by Cargill, as it prohibits recovery "for indirect, punitive, exemplary or consequential damages arising from any breach of contract, tort or other wrong relating to this Agreement, the Corporate Receivables Program or any Corporate Receivables Program Transaction."

[9]  TRE does not acknowledge, despite what Cargill claims, that "the representations at issue were 'extra-contractual.'"  Cargill Opp. at 24, n.14.  To the contrary, the referenced sentence in TRE's Memo made the point that because TRE did not know the nature of the underlying Mercator transactions or have any extra-contractual duties to Cargill under the Seller Program Agreement, "even assuming that TRE made extra-contractual representations to Cargill concerning the Mercator Receivables, Cargill's claimed reliance on such representations would be unreasonable given Cargill's sophistication, its independent (and unique) knowledge of the underlying Mercator transactions, and the language of the Seller Program Agreement."  TRE Memo at 22 (emphasis added).

Cargill also fails to plead any facts creating an inference of fraudulent intent. Cargill's opposition, like its complaint, simply refers to a supposed desire on the part of TRE to "increase its sales and revenue."  Cargill Opp. at 20; Cargill Complaint ¶ 109.  Such conclusory statements about a general profit motive fail as a matter of law to demonstrate fraudulent intent. See Dash v. Seagate Technology (US) Holdings, Inc., 2015 U.S. Dist. LEXIS 44636 at *6 (E.D.N.Y. 2015) (collecting cases).  Equally, Cargill's "conscious misbehavior" argument (based on the supposed "assurance that [the Mercator Receivables] should be sold through the TRE Platform") is unsupported by factual allegations, and ignores the fact that Cargill possessed greater information about the Mercator Receivables than TRE.[10]  (This is why Cargill made representations about what it was selling, not TRE).  Cargill's unique knowledge of its own relationship with Mercator and, specifically, the Mercator Receivables also negates its claim to have reasonably relied on alleged "feedback" from TRE regarding whether a receivable was "appropriate."[11]  So too does the Seller Program Agreement.  It limits TRE's obligations to those "specifically provided" in the Agreement "to the exclusion of all other obligations and responsibilities," meaning TRE had no duty to assure Cargill that any receivable was "appropriate" for sale.  In fact, the opposite is true.

## CONCLUSION

Accordingly, for the reasons stated above, and those set forth in TRE's moving papers (Doc. Nos. 42-44), the Court should dismiss Cargill's third-party complaint in its entirety, with prejudice, and without leave to amend.

---

[10]  Cargill's unique knowledge of the operative facts here distinguishes these circumstances from the cases cited by Cargill (e.g., New Shows, S.A. v. Don King Prods., Inc., 201 F.3d 355 (2d Cir. 2000) and M-101, LLC v. iN Demand L.L.C., 2007 U.S. Dist. LEXIS 88913 (S.D.N.Y. 2007)) where, unlike here, the allegedly misrepresented facts were unknown to the plaintiff.

[11]  Cargill's new assertion that it was induced "to enter into the contracts underlying the Mercator transactions" (Opp. at 24) was not alleged in its complaint and should be ignored.  It nonetheless fails to state a plausible fraud claim any more than what is actually alleged in the third-party complaint, for all the same reasons.

Dated:   New York, New York
         November 13, 2015

                        ZEICHNER ELLMAN & KRAUSE LLP

                    By:_____/s/ Michael E. Sims_____
                        Stuart A. Krause
                        Michael E. Sims
                        1211 Avenue of the Americas
                        New York, New York 10036
                        (212) 223-0400

                        *Attorneys for The Receivables*
                         *Exchange, LLC*