UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ICICI BANK UK PLC,<br><br>          Plaintiff,<br><br>- against -<br><br>CARGILL, INCORPORATED and CARGILL FINANCIAL SERVICES INTERNATIONAL, INC.,<br><br>          Defendant. | Case No. 15-5379 (VEC) |
| CARGILL, INCORPORATED and CARGILL FINANCIAL SERVICES INTERNATIONAL, INC.,<br><br>          Third-Party Plaintiffs,<br><br>- against –<br><br>THE RECEIVABLES EXCHANGE, LLC,<br><br>          Third-Party Defendant. | Oral Argument Requested |
| ICICI BANK UK PLC,<br><br>          Plaintiff on the Additional Claim,<br><br>- against –<br><br>THE RECEIVABLES EXCHANGE, LLC,<br><br>          Defendant on the Additional Claim. | |

**THE RECEIVABLES EXCHANGE, LLC'S REPLY MEMORANDUM OF
LAW IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED
<u>COMPLAINT OF PLAINTIFF ICICI BANK UK PLC</u>**

**ZEICHNER ELLMAN & KRAUSE LLP**
**1211 Avenue of the Americas**
**New York, New York 10036**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... ii

PRELIMINARY STATEMENT .............................................................................1

ARGUMENT............................................................................................................3

POINT I     ICICI'S CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH SEEKS TO DEPRIVE TRE OF THE BENEFIT OF ITS BARGAIN WITH ICICI ...............................................................3

POINT II    ICICI'S OPPOSITION IGNORES THE SPECIFIC PROVISIONS IN THE BUYER AGREEMENT THAT BAR ITS BREACH OF CONTRACT CLAIMS AGAINST TRE....................................................6

POINT III   THE BUYER AGREEMENT ALSO BARS ICICI'S FRAUD CLAIM .........................................................................................................8

CONCLUSION......................................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

American Automobile Ins. Co. v. Rest Assured Alarm System, Inc.,
 786 F. Supp.2d 798 (S.D.N.Y. 2011) ...................................................................................7

Carvel Corp. v. Diversified Management Group, Inc.,
 930 F.2d 228 (2d Cir. 1991) .................................................................................................5

Cary Oil Co., Inc. v. MG Ref. & Mktg., Inc.,
 90 F. Supp.2d 401 (S.D.N.Y. 2000) ....................................................................................6

Constellation Brands v. Keste, LLC,
 2014 U.S. Dist. LEXIS 159753 (W.D.N.Y. 2014) ..............................................................8

Dash v. Seagate Technology (US) Holdings, Inc.,
 2015 U.S. Dist. LEXIS 44636 (E.D.N.Y. 2015) ...............................................................10

Deutsche Lufthansa AG v. Boeing Co.,
 2007 U.S. Dist. LEXIS 9519 (S.D.N.Y. 2007) ....................................................................8

Harsco Corp. v. Segui,
 91 F.3d 337 (2d Cir. 1996) .................................................................................................10

Russell Publishing Group, Ltd. v. Brown Printing Co.,
 2015 U.S. Dist. LEXIS 13909 (S.D.N.Y. 2015) ..................................................................8

TranformaCon, Inc. v. Vista Equity Partners, Inc.,
 2015 U.S. Dist. LEXIS 94896 (S.D.N.Y. 2015) ..................................................................6

**PRELIMINARY STATEMENT**

ICICI's opposition to TRE's motion to dismiss its Amended Complaint scrupulously avoids any discussion of the Buyer Agreement that governs its purchase of receivables on the TRE exchange (which ICICI signed before it began to consider purchasing receivables from Cargill). ICICI ignores the contract because it precludes ICICI's claims against TRE for breach of that agreement, breach of the implied covenant of good faith and fraud. Specifically, by that contract ICICI agreed that TRE had no duty to verify or disclose information concerning the receivables that sellers (like Cargill) might, or did, offer for sale on the exchange, and that TRE was not responsible for the accuracy of seller made representations and warranties, which, it is important to note, were made to TRE as well as to buyers of receivables.

ICICI made other critical promises in the Buyer Agreement. It agreed to make "its own independent decisions with respect to making any bids" on receivables, based on the identity of the seller and account debtor (the obligor of the receivable) and its own review of the representations and warranties made by the seller of the receivable. In this regard, ICICI also agreed that it would make any decision to purchase "without reliance upon <u>any</u>[1] advice, or summary or descriptive information or statements provided or made by TRE." (Emphasis added.) This provision of the agreement, in particular, is crucial to the functioning of the business, because it allows TRE to facilitate activity on the exchange without fear that it will be held liable for any statement it made (or did not make) in the course of communicating with buyers and sellers.

---

[1] The word "any" is a term of broad inclusion. Merriam Webster's online dictionary defines the word "any" as meaning, <u>inter</u> <u>alia</u>, "one or some indiscriminately of whatever kind" and "every." This is as fundamental an expression of breadth as simple English permits. <u>See</u> http://www.merriam-webster.com/dictionary/any.

In short, the Buyer Agreement makes clear that sellers (and not TRE) are on the hook for what they sell over the exchange, since both TRE and potential buyers rely on the accuracy of a seller's representations and warranties about any receivable offered for sale. Yet ICICI's Amended Complaint seeks to do exactly what it agreed it would not do: claim that TRE provided incomplete "summary or descriptive information or statements" about receivables Cargill <u>might</u> sell on the Exchange, and hold TRE responsible for the accuracy of Cargill's representations and warranties regarding the three Mercator Receivables that Cargill sold to ICICI.[2] The Court should dismiss each of ICICI's claims because they contravene the express terms of the Buyer Agreement.

First, ICICI's claim for breach of the implied covenant of good faith must be dismissed as inconsistent with the express terms of the contract, as ICICI asks the Court to find TRE breached an implied obligation to ensure the accuracy of Cargill's representations and warranties. This would actually destroy TRE's negotiated rights under the Buyer Agreement, the very outcome the implied covenant of good faith protects against. Next, ICICI has no contract claim because ICICI agreed that TRE had no duty to verify (and was not responsible for) Cargill's representations and warranties, or any duty to make disclosures concerning receivables that Cargill might potentially sell on the Exchange. Beyond this, ICICI cannot show that TRE otherwise acted grossly negligently or willfully in not making disclosures it had no duty to make. Finally, ICICI's claim for fraudulent omission fails because TRE did not "assume" an extra-contractual duty to disclose to ICICI "the true nature of" the Mercator Receivables sold by Cargill (which Cargill does <u>not</u> allege TRE even knew) by providing some summary information about Cargill and Mercator several months before Cargill posted the first Mercator Receivable

---

[2] Unless otherwise defined herein, capitalized terms have the meaning given in TRE's Memorandum of Law in Support of its Motion to Dismiss dated December 7, 2015 (Doc. 63).

on the Exchange. Equally, ICICI cannot claim to have reasonably relied on "any summary or descriptive information" from TRE when it explicitly agreed it would not rely on such information in deciding whether to purchase a particular receivable. Moreover, ICICI's conclusory allegations about TRE's "active solicitation" of the purchase and desire for "ill gotten profits" create no plausible inference of fraudulent intent. Neither does ICICI's repeated (false) assertion that TRE "knew" the structure of the Mercator Receivables and knew that they contravened Cargill's representations and warranties. Cargill does not allege this.[3] Finally, ICICI's fraud claim does not merely concern "the same general subject matter as [its] breach of contract claim," as argued by ICICI; it is based on the very same allegation with an added conclusion about TRE's supposed wrongful intent. Thus the fraud claim should also be dismissed as duplicative of ICICI's meritless breach of contract claim.

## ARGUMENT

### POINT I

**ICICI'S CLAIM FOR BREACH OF THE IMPLIED COVENANT OF GOOD FAITH SEEKS TO DEPRIVE TRE OF THE BENEFIT OF ITS BARGAIN WITH ICICI**

The implied covenant of good faith and fair dealing, as ICICI notes in its opposition brief, prevents a party to a contract from taking any intentional actions that, while not technically a breach of the agreement, deprives the other party of the benefit of its bargain. Yet

---

[3] ICICI's opposition insistently mischaracterizes Cargill's allegations against TRE by repeatedly and falsely asserting that TRE "knew the true nature of the [Mercator Receivables]" (ICICI Opp. at 8), "knew that the [Mercator Receivables] did not reflect bona fide sales of specified goods" (Id.) and "knew that [the Seller Agreement, Cargill Program Summary, and Information Memorandum] were replete with false representations and warranties." These are frivolous assertions. First, the only document that contained representations and warranties concerning the Mercator Receivables was the Cargill Seller Agreement. More importantly, while Cargill alleges that it discussed with TRE a year before the posting of the actual Mercator Receivables, the possibility that it might generate receivables arising from the so called "Cargill-Back-to-Back Sales," Cargill never alleges that it told TRE the structure underlying the three Mercator Receivables at issue in this case. Indeed, Cargill would have conceded liability to ICICI if it had alleged that TRE knew that the Mercator Receivables did not comply with Cargill's representations and warranties.

this is exactly what ICICI (even though it is the plaintiff here) seeks to do to TRE, by asserting claims against TRE that are completely at odds with the terms of the Buyer Agreement.

In the Buyer Agreement TRE bargained for the right not to be held responsible for "the nature … of any Receivables offered on the Exchange, … the accuracy or sufficiency of any information posted on the Exchange by any Seller or Member Buyer, … or any misrepresentation, breach, default, theft, conversion, fraud or other wrongful act by any Seller or Account Debtor." Buyer Agreement § 5.6(d) (iii), (iv) and (vii). In addition, ICICI agreed that TRE shall not "have any duty to disclose, and shall not be liable for the failure to disclose, any information relating to any Seller or Account Debtor that is communicated to or obtained by TRE or any of its Related Persons in any capacity" and that TRE "shall have no duty to make any inquiry to ascertain the performance or observance by any Seller of any obligations or terms in the Exchange Documents." Id. § 5.6(a)(iii), (iv). ICICI also promised it would make "its own independent decisions" with respect to bidding on receivables, "based on its own appraisal of the Receivables, the applicable Seller and the applicable Account Debtors, and its own review of the applicable Exchange Documents and such other independent information as it deems appropriate, without reliance upon any advice, or summary or descriptive information or statements provided or made by, TRE or its Related Persons." Id. § 4.7.[4]

Notwithstanding these agreements, ICICI now argues that "TRE breached the implied covenant by encouraging and allowing the Cargill Defendants to post [the Mercator Receivables] on its website when it knew or should have known that the [Mercator Receivables] did not comply with [Cargill's] representations and warranties in the Seller Agreement…."

---

[4] Like Cargill, ICICI paradoxically invokes its contractual rights while at the same time suggesting the agreement was not the product of a freely bargained-for exchange. ICICI consistently refers to the Buyer Agreement as a "form agreement" that TRE "required" ICICI to execute. ICICI's insinuation that an international bank was compelled to sign a contract of adhesion by TRE is absurd, and reveals that ICICI knows that the terms of the agreement bar its claims in this action.

ICICI Opp. at 10. This fails to state a claim for breach of an implied obligation because ICICI explicitly agreed TRE had no duty to verify or provide disclosures concerning what Cargill was posting on the Exchange. Indeed, imposing these new obligations on TRE after the fact would destroy TRE's right to the benefits of its agreement with ICICI. This is hardly a "straw man argument" as ICICI claims. It is a truth. ICICI may not, under well established New York law, retroactively change the terms of the Buyer Agreement by seeking to enforce implied obligations that are plainly inconsistent with the express terms of the contract.

ICICI's breach of implied covenant claim should also be dismissed because ICICI does not allege (because Cargill does not allege) any conduct showing TRE "intentionally and purposely" tried to destroy ICICI's rights under the Seller Agreement. See Carvel Corp. v. Diversified Management Group, Inc., 930 F.2d 228, 230 (2d Cir. 1991) (implied covenant of good faith and fair dealing includes "an implied undertaking on the part of each party that he will not intentionally and purposely do anything to prevent the other party from carrying out the agreement on his part") (emphasis added). Instead, ICICI mischaracterizes Cargill's third-party complaint. According to ICICI, Cargill alleges that TRE knew the Mercator Receivables "did not and could not satisfy the representations and warranties in the Seller Agreement and ancillary documents" yet encouraged Cargill to offer for them for sale anyway. ICICI Opp. at 12. In truth, Cargill stands behind its representations and warranties and, to be sure, has never alleged that TRE knew or should have known that the posting of these receivables would result in Cargill breaching representations and warranties in the Seller Agreement.

Cargill alleges it sent generic disclaimer language about potential transactions more than one year before the posting of the first Mercator Receivable, but does not allege that TRE was informed (or otherwise knew) that the three specific receivables at issue here (i.e.,

5

those Cargill sold in October 2014, December 2014 and April 2015) involved Cargill Back-to-Back Sales.[5] There is nothing in Cargill's third-party complaint to support ICICI's contention that TRE knew the terms of the Seller Agreement "would be contradicted by the [Mercator Receivables]." ICICI Opp. at 11.

The Court should also dismiss ICICI's breach of implied covenant claim because it is duplicative of the claim for breach of the Buyer Agreement, as both claims are based on TRE's alleged failure to inform ICICI about the "true nature of" the Mercator Receivables. Compare ICICI Amended Complaint ¶ 67 with ¶ 70.[6] See Cary Oil Co., Inc. v. MG Ref. & Mktg., Inc., 90 F. Supp.2d 401, 419 (S.D.N.Y. 2000). ICICI's purported entitlement to plead "in the alternative" is no reason for the Court to uphold a meritless and duplicative claim. Courts regularly dismiss implied covenant of good faith claims at the pleading stage. See e.g., TranformaCon, Inc. v. Vista Equity Partners, Inc., 2015 U.S. Dist. LEXIS 94896 at *16-17 (S.D.N.Y. 2015) (dismissing breach of implied duty claim because "the contract plainly governs").

## POINT II

**ICICI'S OPPOSITION IGNORES THE SPECIFIC PROVISIONS IN THE BUYER AGREEMENT THAT BAR ITS BREACH OF CONTRACT CLAIMS AGAINST TRE**

TRE cannot breach a contractual duty it did not have. The contract is clear. TRE had no duty to ascertain the "true nature of" the Mercator Receivables or disclose to ICICI

---

[5] This is important, because when Cargill and TRE discussed a potential receivable from Mercator in January 2014 (long before Cargill posted the first Mercator Receivable), Cargill had advised that the goods it sold to Mercator might be "used by Mercator, sold to a 3rd party, or resold to Cargill for the purpose of extending financing to Mercator." Cargill Third-Party Complaint ¶ 43. Obviously, only one of these three possibilities results in a Cargill Back-to-Back Sale. Cargill was no less ambiguous in February 2014, when it advised TRE "that the commodity that [Cargill was] planning to sell to Mercator "may be … resold to Cargill for purpose of extending financing to Mercator. Id. ¶ 45 (emphasis added).

[6] On this issue, ICICI merely concludes that both "claims, of course, are based on different allegations and are, therefore, properly pled," (ICICI Opp. at 13), but makes no attempt to actually show how the allegations underlying the two claims are different.

information about them or any other receivable that Cargill may have contemplated offering for sale on the Exchange.[7] Instead, ICICI agreed it would rely on the Seller Agreement (notably Cargill's representations and warranties contained therein) and its own independent information, and not any "summary or descriptive information or statements provided or made by TRE" such as the Cargill Program Summary or the Information Memorandum. Buyer Agreement § 4.7. ICICI cannot rewrite the contract now simply because it wants to rescind its purchase from Cargill, and ICICI (tellingly) offers no opposition argument on this point.

ICICI's opposition ignores the specific contractual provisions in the Buyer Agreement that bar its contract claim. It focuses only on the more general provision that broadly limits TRE's liability "for any act or omission in any way related to the Exchange or the Exchange Documents" to acts of gross negligence, bad faith, fraud or willful misconduct (Buyer Agreement § 5.6(c)), and argues "that TRE breached this contractual undertaking" by not informing ICICI "of the true nature of the [Mercator] Receivables." ICICI Opp. at 14. This claim fails as a matter of law because TRE cannot have grossly negligently or willfully failed to do something it had no duty to do: i.e., provide information to ICICI about Cargill's representations or the Mercator Receivables. In addition, Cargill's allegations (the predicate for ICICI's claims) do not show that TRE engaged in the type of intentional and egregious misconduct necessary to show gross negligence. American Automobile Ins. Co. v. Rest Assured Alarm System, Inc., 786 F. Supp.2d 798, 808 (S.D.N.Y. 2011) ("[t]o constitute gross negligence, the act or omission must be of an aggravated character, as distinguished from the failure to

---

[7] As discussed herein and in TRE's moving papers, and contrary to ICICI's repeated misstatements on this point, Cargill does not allege that TRE knew the "true nature" of the Mercator Receivables.

7

exercise ordinary care.") Moreover, courts regularly dismiss at the pleading stage breach of contract claims based on similar exculpatory provisions.[8]

Here, notwithstanding ICICI's mischaracterizations of Cargill's Third-Party Complaint, Cargill alleges only that it discussed with TRE the possibility of such transactions, among other types, a year before Cargill posted the first Mercator Receivable on the Exchange, and it makes no allegation that Cargill ever informed TRE that it was posting a receivable arising from a Cargill Back-to-Back Sale. And, TRE was equally entitled to rely on Cargill's representations about the Mercator Receivables as ICICI.[9] In short, even assuming ICICI's breach of contract claim was not barred by the more specific disclaimers in the Buyer Agreement (it is), none of Cargill's allegations against TRE provide ICICI with a plausible claim that TRE engaged in the type of the "egregious intentional misbehavior evincing extreme culpability" required to overcome the broader limitations on TRE's liability contained in Section 5.6(c) of the Buyer Agreement.

## POINT III

## **THE BUYER AGREEMENT ALSO BARS ICICI'S FRAUD CLAIM**

The Court should dismiss ICICI's fraud claim for several reasons. First, ICICI's opposition never confronts the fact it agreed TRE had no duty to disclose information concerning receivables that sellers posted on the Exchange. Instead, ICICI argues that "TRE assumed a duty

---

[8] See, e.g., Russell Publishing Group, Ltd. v. Brown Printing Co., 2015 U.S. Dist. LEXIS 13909 at *5-6 (S.D.N.Y. 2015) ("RPG has not pleaded facts that would constitute either willful or grossly negligent conduct"); Constellation Brands v. Keste, LLC, 2014 U.S. Dist. LEXIS 159753 at *14-14 (W.D.N.Y. 2014) ("the allegations of intentional wrongdoing … do not plausibly plead the type of egregious conduct that is required to set aside a clause limiting damages"); Deutsche Lufthansa AG v. Boeing Co., 2007 U.S. Dist. LEXIS 9519 at *7 (S.D.N.Y. 2007) (holding "the conduct alleged by Lufthansa falls well below the levels required by the New York courts to invalidate a mutually agreed upon limitation of liability").

[9] The proposed disclaimer that Cargill allegedly shared with TRE about possible Cargill-Back-to-Back Sales states: "we would look to insert the disclaimer … in any transaction involving Cargill-to-Cargill trade flows or those where a Cargill entity is inserted between two related or non-related entities." Cargill Complaint ¶ 41 (emphasis added). In order to provide such a disclaimer, the "we" (presumably Cargill) must actually know that a transaction is one "involving Cargill-to-Cargill trade flows" or "where a Cargill entity is inserted between two related or non related entities." There is no allegation that TRE did know this.

8

to disclose accurate and complete information about the [Mercator Receivables], even if such a duty was not imposed under [the Buyer Agreement]." ICICI Opp. at 16. But this assertion mischaracterizes a core term of the Buyer Agreement. It is not just that a duty "was not imposed under" the Buyer Agreement (which falsely implies that the parties were silent on this issue in the contract). Rather, under the Agreement <u>ICICI expressly agreed that TRE had no duty of disclosure</u>. Buyer Agreement § 5.6. ICICI does not explain when or how, exactly, TRE "assumed" such a duty, beyond claiming TRE had a role in "soliciting the Bank to buy."[10] ICICI Opp. at 16. No duty was created by TRE's provision of the Cargill Program Summary and Information Memorandum (which make clear they are provided for informational purposes only)[11] given ICICI's written promise to make "its own independent decisions with respect to making any bids to purchase Receivable Interests … without reliance upon any advice, or summary or descriptive information or statements provided or made by, TRE or its Related Persons." Buyer Agreement § 4.7.

    Second, TRE's challenge to ICICI's claim of reasonable reliance is not just based on "TRE's contractual disclaimers of liability," as ICICI argues. ICICI Opp. at 19. ICICI's reliance is also unreasonable because it is based on the very type of "summary or descriptive information or statements" (<u>i.e.</u>, the Information Memorandum and Cargill Program Summary) that ICICI agreed it would not rely on. All of the cases cited by ICICI involving the "peculiar knowledge exception" are inapposite, because only Cargill had "peculiar knowledge" of the

---

[10] As noted in TRE moving papers, ICICI's conclusory assertion that "TRE solicited the Bank's purchase of the [Mercator Receivables] (ICICI Amended Complaint ¶ 37) is not supported by the pleaded facts. ICICI's Amended Complaint refers only to routine communications from TRE to ICICI such as: "Would you be interested in $5mm of Mercator in next 2 weeks or so. Same terms or maybe a bit tighter on the margin," and also: "Just a heads up that we're expecting another $5mm of Mercator before month-end."

[11] The Information Memorandum states: "<u>This information is for review purposes only and is not related to or indicative of any particular transaction for the purchase or sale of accounts receivables</u>. The Receivables Exchange, LLC is not responsible for the content or accuracy of the below information and it has compiled such information from certain publicly available reference materials and sources as cited below." <u>See</u> Sims Declaration, Exhibit 3-D (Doc. 62-8) (emphasis added.)

Mercator Receivables and how, if at all, they affected the accuracy of Cargill's representations to TRE and ICICI. Finally, Courts will dismiss deficient fraud claims at the pleading stage where the claimed reliance is unreasonable as a matter of law, particularly where barred by contract. See Harsco Corp. v. Segui, 91 F.3d 337, 345-46 (2d Cir. 1996) (affirming 12(b)(6) dismissal of fraud claims based on lack of reasonable reliance, as there "[w]as no reason not to hold [plaintiff] to the deal it negotiated"). As in Harsco, there is no reason not to hold ICICI to the deal it negotiated in the Buyer Agreement.

Third, ICICI pleads no facts creating a plausible inference of fraudulent intent. Regarding ICICI's alleged "motive," ICICI alleges only that TRE was motivated "to generate ill-gotten profits." ICICI Amended Complaint ¶ 82. This vague allegation fails to adequately plead motive as a matter of law. See e.g, Dash v. Seagate Technology (US) Holdings, Inc., 2015 U.S. Dist. LEXIS 44636 at *6 (E.D.N.Y. 2015). Equally, there are no allegations showing "conscious misbehavior" by TRE. Cargill never informed TRE that the Mercator Receivables arose from Cargill Back-to-Back-Sales and, moreover, TRE was entitled to rely on Cargill's representations concerning the receivables. Finally, ICICI's fraud claim does not merely concern "the same general subject matter as [its] breach of contract claim." ICICI Opp. at 21. It is based on the very same allegation as the contract claim (that TRE did not disclose to ICICI the "true nature" of the Mercator Receivables) and is thus duplicative of that claim. ICICI cannot conjure a separate fraud claim by describing the same allegation in different ways.

## CONCLUSION

Accordingly, for the reasons stated above, and those set forth in TRE's moving papers (Doc. 61-63), the Court should dismiss ICICI's Amended Complaint with prejudice and without further leave to amend.

Dated:  New York, New York
        January 18, 2016

                                                     ZEICHNER ELLMAN & KRAUSE LLP

                                                     By:     /s/ Michael E. Sims
                                                          Stuart A. Krause
                                                          Michael E. Sims
                                                          1211 Avenue of the Americas
                                                          New York, New York 10036
                                                          (212) 223-0400

                                                          *Attorneys for The Receivables*
                                                            *Exchange, LLC*